UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| WADE MAY, ) <br> ) <br>         Plaintiff, ) <br> vs. ) <br> ) <br> CALIFORNIA HOTEL AND CASINO, INC, ) <br> ) <br>         Defendant. ) <br> ) | Case No.: 2:13-cv-00066-GMN-PAL <br><br> **ORDER** |

      Pending before the Court is the Motion to Dismiss or, in the alternative, for Summary Judgment (ECF No. 17) filed by Defendant California Hotel and Casino, Inc. ("CH&C") on September 30, 2013.[1] Plaintiff Wade May ("Plaintiff") filed his Response (ECF No. 22) on October 31, 2013.  Plaintiff also incorrectly filed several exhibits supporting his Response as "Amended Responses." (ECF Nos. 23-25.)  CHC&C filed its Reply to Plaintiff's Response (ECF No. 28) on November 19, 2013.  For the reasons discussed below, Plaintiff's federal claims are **DISMISSED without prejudice**.  This action shall be **REMANDED** to state court for adjudication of Plaintiff's remaining state-law claims.

**I.   BACKGROUND**

      On June 17, 2010 at approximately 4:30 p.m., Plaintiff, who is African-American, walked into the casino operated by CH&C and picked up an empty plastic coin bucket. (Second Amended Complaint ¶¶ 6, 26, Ex. D to Statement of Removal, ECF No. 8-4.)  As he had during

---

[1] As CH&C's Motion (ECF No. 17) was filed following the completion of discovery (ECF No. 16) and both parties have submitted materials outside the pleadings, the Court will treat it as a motion for summary judgment and consider those materials outside the pleadings. *See Anderson v. Angelone*, 86 F.3d 932, 934 (9th Cir. 1996) ("A motion to dismiss … must be treated as a motion for summary judgment … if either party to the motion to dismiss submits materials outside the pleadings in support or opposition to the motion, and if the district court relies on those materials.") (citations omitted); Fed. R. Civ. P. 12(d).

prior visits to the casino, Plaintiff filled the bucket with coins totaling $33.50 and proceeded to the cashier's window in order to convert the coins to paper money. (*Id.* ¶ 6-8.)

Plaintiff's entrance into the casino had been observed by Slot Floorperson Richard Slattery. (*Id.* ¶ 9; Portion of Slattery Depo. 13:12-22, Ex. A to Motion for Summary Judgment, ECF No. 17-1.) Mr. Slattery noted that Plaintiff had not been carrying a coin bucket when he entered the casino, but during a short period of time when he was out of Mr. Slattery's view, Plaintiff had obtained a coin bucket and was "briskly walk[ing]" toward the casino cashier. (Portion of Slattery Depo. 13:23-14:7, Ex. A to Motion for Summary Judgment, ECF No. 17-1.) Mr. Slattery then radioed his supervisor and security and informed them that Plaintiff may have picked up a bucket with coins that did not belong to him. (*Id.*; Second Amended Complaint ¶ 9, Ex. D to Statement of Removal, ECF No. 8-4.)

When Plaintiff arrived at the cashier's window, he was greeted by a white female floor manager and a white male floor manager. (Second Amended Complaint ¶ 9, Ex. D to Statement of Removal, ECF No. 8-4.) The female floor manager then asked Plaintiff if he had a Player's Card with CH&C. (*Id.* ¶ 13.) To which Plaintiff responded, "[W]hat did I do?" before handing her his Player's Card. (*Id.* ¶¶ 14-15.) The floor manager swiped Plaintiff's Player's Card but did not respond to the question. (*Id.* ¶ 15.)

Around this time, Plaintiff also noticed a black male security officer standing behind him, who began putting on leather gloves while staring at Plaintiff. (*Id.* ¶ 10; Portion of Plaintiff Depo. 30:1-31:17, Ex. C to Motion for Summary Judgment, ECF No. 17-3.) Plaintiff asserts that he began to feel trapped and believed that if he tried to leave, he would be stopped by CH&C employees. (Second Amended Complaint ¶ 11, Ex. D to Statement of Removal, ECF No. 8-4.)

When Plaintiff's Player's Card was accepted but the cashier did not immediately pay him, Plaintiff again asked the female floor manager, "[W]hat did I do?" and then "[C]an I have

my money?" (*Id.* ¶¶ 15-17.) After again failing to receive an answer, Plaintiff next asked the cashier, "[are] you are doing this because I'm black?" (*Id.* ¶ 18.) None of CH&C's employees responded to the question. (*Id.*)

While Plaintiff was at the cashier's window, Mr. Slattery asked patrons in the area where Plaintiff had picked up his coin bucket if anything was missing. (Portion of Slattery Depo. 14:14-24, Ex. A to Motion for Summary Judgment, ECF No. 17-1.) He determined that nothing was missing and reported that "all is clear" to his supervisor. (*Id.*)

Finally, after Plaintiff again asked for his money, the cashier handed Plaintiff his $33.50 in paper money.[2] (Second Amended Complaint ¶ 18, Ex. D to Statement of Removal, ECF No. 8-4.) Feeling humiliated, Plaintiff immediately left the casino upon receiving his money. (*Id.* ¶¶ 20-21.) No employee of CH&C, either before or after the incident, attempted to explain to Plaintiff what had happened or apologize for the delay. (*Id.* ¶ 22.)

According to the casino security tapes, the entire transaction at the cashier's window lasted three minutes and thirty-one seconds. (Portion of Gaming Board Agent Brissae Depo. 20:9-22, Ex. B to Motion for Summary Judgment, ECF No. 17-2; Portion of Plaintiff Depo. 33:5-12, Ex. C to Motion for Summary Judgment, ECF No. 17-3.) At no time during the incident did any employing of CH&C touch Plaintiff or make any reference to race. (Portion of Plaintiff Depo. 30:1-7, 31:18-34:14, Ex. C to Motion for Summary Judgment, ECF No. 17-3.) After being contacted by Plaintiff, an investigation into the incident performed by the State of Nevada Gaming Control Board (the "GCB") found that "[a]lthough the situation could have been handled better, … [CH&C] acted in the best interest of their patrons [and there was] no evidence of racial discrimination." (GCB Letter, Ex. D to Motion for Summary Judgment, ECF No. 17-4.) Notably, however, there is no indication in the record that the Nevada Equal Rights Commission (the "NERC") ever received notice of the incident.

---

[2] Presumably the $0.50 remainder was still in coins.

Plaintiff filed his Original and First Amended Complaints in Nevada state court on June 12, 2012 and July 25, 2012 respectively, alleging claims for violation of Nevada due process class, declaratory relief, false imprisonment, assault, and intentional infliction of emotional distress. (Original Complaint, Ex. A to Statement of Removal, ECF No. 8-1; First Amended Complaint B. to Statement of Removal, ECF No. 8-2.) After the parties stipulated to dismiss the claims for violation of Nevada due process class and declaratory relief (Stipulation, Ex. C. to Statement of Removal, ECF No. 8-3), Plaintiff filed his Second Amended Complaint on November 19, 2012, adding a federal claim for violation of 42 U.S.C. § 2000a and seeking declaratory relief on that claim. (Second Amended Complaint, Ex. D to Statement of Removal, ECF No. 8-4.) CH&C then filed its Notice of Removal (ECF No. 1) on January 14, 2013 based upon the newly asserted federal claims.

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255.  But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

### III. DISCUSSION

#### A. Violation of 42 U.S.C. § 2000a Claim

Title II of the Civil Rights Act of 1964 ("Title II") guarantees equal access to "the goods, services, facilities, privileges, advantages, and accommodations of any places of public accommodation, … without discrimination or segregation on the ground of race color, religion, or national original." 42 U.S.C. § 2000a(a).  However, there are also certain jurisdictional prerequisites to bringing a claim under Title II.  Specifically, 42 U.S.C. § 2000a-3(c) provides:

> In the case of an alleged act or practice prohibited by this subchapter which occurs in a State … which has a State or local law prohibiting such act or practice and establishing or authorizing a State or local authority to grant or seek relief from such practice … upon receiving notice thereof, *no civil action may be brought under subsection (a) of this section before the expiration of thirty days after written notice of such alleged act or practice has been given to the appropriate State or local authority* by registered mail or in person….

42 U.S.C. § 2000a-3(c) (emphasis added).  Therefore, if the state in which the alleged civil rights violation occurred has established an agency with authority to hear complaints of discrimination prohibited by Title II, giving notice of the violation to the appropriate state agency is a prerequisite for federal jurisdiction.[3]  *See Boyle v. Jerome Country Club*, 883 F. Supp. 1422, 1425-26 (D. Idaho 1995) (citing *Stearnes v. Baur's Opera House, Inc.*, 3 F.3d 1142, 1144-45 (7th Cir. 1993)); *see also Bilello v. Kum & Go, LLC.*, 374 F.3d 656, 658-59 (8th

---

[3] The Court notes that while notice to the appropriate state agency is a prerequisite for this Court to exercise jurisdiction over a Title II claim, a plaintiff's exhaustion of their state remedies is not required in order for this Court to exercise jurisdiction. 42 U.S.C. § 2000a-6(a).

Cir. 2004); *Watson v. Fraternal Order of Eagles*, 915 F.2d 235, 242 (6th Cir. 1990); *Harris v. Ericson*, 457 F.2d 765, 766-67 (10th Cir. 1972).[4]

With respect to Plaintiff's claims arising under Title II, the State of Nevada has created a state agency for the purpose of protecting human rights. In Nevada Revised Statute section 233.010(2), the Nevada Legislature declared that it was the "public policy of the State of Nevada to protect the welfare, prosperity, health and peace of all the people of the State, and to foster the right of all persons reasonably to seek and be granted services in places of public accommodation without discrimination … because of race …." Nev. R. Stat. § 233.010(2). To enforce these policies, the NERC was created with the power to, "[w]ith regard to public accommodation, investigate tensions, practices of discrimination and acts of prejudice against any person or group because of race … and … conduct hearings with regard thereto." Nev. Rev. Stat. § 233.150(a). Furthermore, Chapter 651 of the Nevada Revised Statutes prohibits discriminatory practices in places of public accommodation on account of race and provides that any person who believes that he or she has been denied full and equal enjoyment of the goods or services of a place of public accommodation "may file a complaint to that effect with the Nevada Equal Rights Commission." Nev. Rev. Stat. §§ 651.070, 651.110.

CH&C asserts that Plaintiff's 42 U.S.C. § 2000a claims must be dismissed because Plaintiff failed to provide notice of his claims to the appropriate Nevada agency, the NERC. (Motion for Summary Judgment 5:14-26, ECF No. 17.) Plaintiff counters by arguing that he complied with the § 2000a-3(c) notice requirement by filing a complaint with the GCB. (Response 8:6-23, ECF No. 22.) However, the NERC, not the GCB is the "appropriate State or

---

[4] Though at the time of this opinion there does not appear to be any Ninth Circuit decision directly addressing this jurisdictional prerequisite, the Court concludes that the Ninth Circuit would follow the decisions of the Sixth, Seventh, Eighth, and Tenth Circuits if presented with the issue. *See Botosan v. Paul McNally Realty*, 216 F.3d 827, 831-32 (9th Cir. 2000) (finding that the notice requirement in 42 U.S.C. § 2000a-3(c) does not apply to Title III of the Americans with Disabilities Act and appearing to imply that if the section did apply, a plaintiff would be "required to provide notice to [the appropriate] state or local agency as a prerequisite to filing suit.").

local authority" established in Nevada for addressing the claims alleged by Plaintiff.[5] *See* 42 U.S.C. § 2000a-3(c) (requiring notice with the "appropriate" state authority that is authorized to grant relief under state law); Nev. Rev. Stat. §§ 233.150(a), 651.110 (expressly conferring authority to address claims for denial of full and equal enjoyment of the goods or services of any place of public accommodation based on race or color with the NERC).  There is no indication in the record that the NERC was ever notified of Plaintiff's claims. Therefore, because Plaintiff failed to notify the NERC of the alleged discrimination in a place of public accommodation, this Court lacks jurisdiction to hear the Title II claim. *See Bilello*, 374 F.3d at 658-59 (finding that providing notice of an alleged Title II violation with the City of Omaha's Human Relations Director did not meet the § 2000a-3(c) notice requirement when Nebraska had passed a law specifically authorizing the Nebraska Equal Opportunity Commission to administer such claims); *see also Boyle*, 883 F. Supp. at 1425-26 (finding that the § 2000a-3(c) notice requirement required the plaintiff to file notice of an alleged Title II violation with the Idaho Human Rights Commission, which was the state agency specifically authorized by state law to administer such claims); *White v. Denny's Inc.*, 918 F. Supp. 1418, 1423 (D. Colo. 1996) (finding that the § 2000a-3(c) notice requirement required the plaintiff to file notice of an alleged Title II violation with the Colorado Civil Rights Commission, which was the state agency specifically authorized by state law to administer such claims).

Accordingly, the Court must dismiss Plaintiff's claims under 42 U.S.C. § 2000a without prejudice for lack of jurisdiction. *Kelly v. Fleetwood Enters., Inc.*, 377 F.3d 1034, 1036 (9th Cir. 2004) ("because the district court lacked subject matter jurisdiction, the claims should have been dismissed without prejudice.").

---

[5] In its letter to Plaintiff following its investigation, the GCB appears to acknowledge that it is not the appropriate state authority for addressing Plaintiff's claims of civil rights violations when it writes: "The Nevada Gaming Control Board's jurisdiction in this matter is limited to a determination of whether the licensee operated their gaming related activities in a suitable manner according to gaming regulations." (GCB Letter, Ex. D to Motion for Summary Judgment, ECF No. 17-4.)

### B. Remaining State Tort Claims

The basis for removal in this case was the original jurisdiction held by this Court over the 42 U.S.C. § 2000a claim arising under the laws of the United States. 28 U.S.C. §§ 1331, 1441. However, the remaining claims of false imprisonment, assault, and intentional infliction of emotional distress are tort claims arising under Nevada state law. As this Court has determined that it does not have original jurisdiction over the 42 U.S.C. § 2000a claim, it necessarily cannot exercise supplemental jurisdiction over Plaintiff's state-law claims. 28 U.S.C. § 1367(a) ("[I]n any civil action *of which the district courts have original jurisdiction,* the district courts shall have supplemental jurisdiction") (emphasis added); *Herman Family Revocable Trust v. Teddy Bear*, 254 F.3d 802, 805 (9th Cir. 2001) ("The statute's plain language makes clear that supplemental jurisdiction may only be invoked when the district court has a hook of original jurisdiction on which to hang it."). Therefore, because this Court lacks jurisdiction, this action shall be remanded to state court for adjudication of Plaintiff's remaining state-law claims. 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."); *see Maniar v. Federal Deposit Ins. Corp.*, 979 F.2d 782, 784–85 (9th Cir. 1992) (noting that a district court has power to remand a case *sua sponte* when it lacks subject matter jurisdiction); *see also Corporate Mgmt. Advisors, Inc. v. Artjen Complexus, Inc.*, 561 F.3d 1294, 1296 (11th Cir. 2009) ("The district court may remand a case *sua sponte* for lack of subject matter jurisdiction at any time.").

### IV. CONCLUSION

**IT IS HEREBY ORDERED** that CH&C's Motion to Dismiss or, in the alternative, for Summary Judgment (ECF No. 17) is **GRANTED** to the extent it conforms to the above. Plaintiff's claims for violations of 42 U.S.C. § 2000a and for declaratory relief arising from a 42 U.S.C. § 2000a violation are dismissed without prejudice for lack of jurisdiction.

**IT IS FURTHER ORDERED** that this action shall be **REMANDED** to the Eighth Judicial District Court, State of Nevada, Clark County for adjudication of Plaintiff's remaining state-law claims for false imprisonment, assault, and intentional infliction of emotional distress.

The Clerk of the Court shall enter judgment accordingly.

**DATED** this __14_ day of April, 2014.

_____
Gloria M. Navarro, Chief Judge
United States District Judge